FOR YOUR INFORMATION

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0017P (6th Cir.)
File Name: 04a0017p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

No. 02-3033

BHANUKUMAR C. SHAH,
*Plaintiff-Appellant,*

v.

DEACONESS HOSPITAL,
*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 00-00178—S. Arthur Spiegel, District Judge.

Argued: August 5, 2003

Decided and Filed: January 14, 2004

Before: BOGGS, Chief Judge; RYAN,[*] Circuit Judge;
ROSEN, District Judge.

## COUNSEL

**ARGUED:** Mark Joseph Byrne, JACOBS, KLEINMAN, SEIBEL & McNALLY, Cincinnati, Ohio, for Appellant.

---

[*] The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

Peggy M. Barker, KOHNEN & PATTON, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Mark Joseph Byrne, JACOBS, KLEINMAN, SEIBEL & McNALLY, Cincinnati, Ohio, for Appellant. Peggy M. Barker, Anthony J. Caruso, Joseph L. Dilts, KOHNEN & PATTON, Cincinnati, Ohio, for Appellee.

---

## OPINION

RYAN, Circuit Judge. Dr. Bhanukumar C. Shah is a general surgeon, who for many years had surgical privileges at Deaconess Hospital in Cincinnati, Ohio. In 1999, Deaconess revoked part of Shah's surgical privileges after one of his patients died following surgery. Shah filed suit in federal court, claiming that Deaconess discriminated against him based on his age and East Indian national origin. The district court granted summary judgment to Deaconess because Shah failed to establish a *prima facie* case of discrimination and failed to create a genuine factual issue regarding his claim that Deaconess' stated reason for the action was pretextual. Shah appeals the grant of summary judgment.

For reasons we shall explain, we decline to address the merits of Shah's claim, but we **AFFIRM** nonetheless, on the ground that Shah failed to make out even a *prima facie* case for entitlement to the relief he seeks because he failed to show that there existed an employer-employee relationship between himself and Deaconess.

### I. FACTUAL BACKGROUND

Shah has held unrestricted surgical privileges at Deaconess for over 20 years, as well as at several other Ohio hospitals. In 1998, Shah performed thyroid resection surgery at Deaconess on a 75-year-old woman suffering from neck swelling. Initially, the surgery appeared to go well, but the next day the patient complained of calf tenderness and soreness in the incision area. On July 30, she was seen by one Dr. Sarkar for treatment of thrombophlebitis. Around midnight the following day, the hospital's house physician called Shah to report swelling in the patient's neck. Shah determined that no immediate action was necessary and that there was no need that he travel to the hospital. He instructed the house physician that if the swelling began to interfere with the patient's breathing, he should cease administering Heparin and drain the blood from her neck. At 2:00 a.m., the house physician called Shah a second time to report that the patient was having trouble breathing, although her neck swelling had not increased. Shah instructed the house physician that either drainage of the hematoma or endotracheal intubation would be necessary if the swelling increased. Around 3:15 a.m., the patient went into cardiac arrest. The house physician called a third time, prompting Dr. Shah to leave for the hospital. He arrived about thirty minutes later to find the patient intubated and on a respirator. He secured an operating room team and sought consent from the patient's family to perform emergency surgery. The patient's family took several hours to give consent; Shah believed that he could afford to wait since the patient already was intubated. Eventually, Shah obtained consent and performed the neck drain surgery. Over the next two weeks, the patient's condition deteriorated, and she died.

Pursuant to its policy of automatically reviewing all cases involving patient death, Deaconess initiated a peer review of Shah's conduct. The review proceeded through numerous stages, beginning in October 1998, with a letter to Shah from the Clinical Review Committee, and ending in June 1999, when the hospital's Board of Trustees voted unanimously to uphold an earlier finding that "a serious misjudgement occurred in the management" of the deceased patient. The Board of Trustees also upheld a recommendation to revoke Shah's privileges to perform head and neck surgery and to impose a one-year period of concurrent monitoring and focused review.

Shah sued Deaconess in federal district court in March 2000. He asserted three claims: (1) age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634; (2) discrimination based on national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17; and (3) discrimination in violation of Ohio Rev. Code Ann. § 4112.02(A). Deaconess filed a motion for summary judgment, which the district court granted on the ground that Shah failed to establish a *prima facie* case because he did not show "that he was qualified to perform head and neck surgeries." The court also concluded that Shah failed to rebut Deaconess' legitimate, non-discriminatory explanation for its action by showing it was pretextual.

## II. STANDARD OF REVIEW

"We review a district court's grant of summary judgment de novo, using the same standard under Rule 56(c) used by the district court." *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir. 2002). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "We view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Policastro*, 297 F.3d at 538. Additionally, "because a grant of summary judgment is reviewed de novo, [we] may affirm the judgment of the district court on any grounds supported by the record, even if they are different from those relied upon by the district court." *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 655 (6th Cir. 2000).

## III. ANALYSIS

The first issue we must address—remarkably, one not raised by either party—is whether Shah's relationship with Deaconess, employee or independent contractor, qualifies him for the statutory relief he seeks. We directed counsel to address the issue at oral argument and they did so. We conclude that: (1) the record discloses that Shah did not make a *prima facie* case showing that he was an employee at Deaconess; (2) that, as such, the employment discrimination statutes upon which Shah relies do not apply; and (3) Deaconess is entitled to judgment as a matter of law.

### A.

Both Title VII, 42 U.S.C. § 2000e-5(f)(1), and the ADEA, 29 U.S.C. § 626(c), empower "person[s] claiming to be aggrieved" to bring civil actions to enforce the statutes' substantive prohibitions against unlawful employment practices. Under Title VII, it is "an unlawful employment practice . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The ADEA employs identical language with respect to age discrimination. 29 U.S.C. § 623(a). Ohio uses similar language in its anti-discrimination law, Ohio Rev. Code Ann. § 4112.02(A), and Ohio courts analyze claims under that statute by reference to federal case law interpreting Title VII. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981); *see also Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002); *Cline v. Catholic Diocese*, 206 F.3d 651, 668 (6th Cir. 2000).

As a general rule, the federal employment discrimination statutes protect employees, but not independent contractors. *See Johnson v. City of Saline*, 151 F.3d 564, 567-69 (6th Cir. 1998) (ADA); *Simpson v. Ernst & Young*, 100 F.3d 436, 443

(6th Cir. 1996) (ADEA); *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991) (Title VII). *Cf. Falls v. Sporting News Publ'g Co.*, 834 F.2d 611, 613 (6th Cir. 1987) (ADEA and Title VII). We have not applied this rule, in a published decision, in the context of a physician denied hospital privileges. In an unpublished decision, *Chadha v. Hardin Mem'l Hosp.*, No. 99-3166, 2000 WL 32023, at **2 (6th Cir. Jan. 6, 2000) (unpublished disposition), we held that the ADA did not apply to a physician who was an independent contractor.

Three of our sister circuits have explicitly held that a physician denied hospital privileges is not protected by the federal employment discrimination statutes if he or she is an independent contractor. *See, e.g., Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 261-63 (4th Cir. 1997); *Alexander v. Rush North Shore Med. Ctr.*, 101 F.3d 487, 493-94 (7th Cir. 1996); *Diggs v. Harris Hosp.-Methodist, Inc.*, 847 F.2d 270, 272-73 (5th Cir. 1988). For example, in *Alexander*, 101 F.3d 487, the Seventh Circuit held that a physician whose hospital privileges had been revoked was not an employee within the meaning of Title VII because the hospital did not have "'the right to control'" the physician. *Id.* at 493-94 (citation omitted).

Like the Seventh Circuit, we apply the common law agency test to determine whether a hired party is an independent contractor or an employee. *Johnson*, 151 F.3d at 568 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992)). *Cf. Clackamas Gastroenterology Assocs., P.C. v. Wells*, 123 S. Ct. 1673, 1677-81 (2003). It is true that some of our cases have applied an "economic realities" test, which looks to the totality of the circumstances involved in a work relationship, including "whether the putative employee is economically dependent upon the principal or is instead in business for himself." *Lilley v. BTM Corp.*, 958 F.2d 746, 750 (6th Cir. 1992); *see also Armbruster v. Quinn*, 711 F.2d 1332, 1340 (6th Cir. 1983). But, in more recent cases, we have made it clear that we prefer the common law agency

analysis. The substantive differences between the two tests are minimal. *Johnson*, 151 F.3d at 568; *Simpson*, 100 F.3d at 442-43.

As explained in *Simpson*, the common law analysis requires the consideration of numerous factors, including:

the hiring party's right to control the manner and means by which the product is accomplished; the skill required by the hired party; the duration of the relationship between the parties; the hiring party's right to assign additional projects; the hired party's discretion over when and how to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the hiring party's regular business; the hired party's employee benefits; and tax treatment of the hired party's compensation.

100 F.3d at 443 (citing *Darden*, 503 U.S. at 323-24).

Viewed in a light most favorable to Shah, the record in this case fails to disclose any dispute regarding any of these factors.

We can begin with Shah's deposition statement that he is "not [an] employee technically" of Deaconess:

I'm not employee of Deaconess Hospital but Deaconess Hospital controls my privileges, my practice, and I have a contractual arrangement which gives me privilege to bring my patients there. I have a, I have a contractual arrangement with my patients to treat at Deaconess Hospital. So even though I'm not employee technically, I'm, I'm just treated like employee there except I don't get paid from Deaconess.

Deaconess does not pay Shah for his services or provide him with a W-2 form, and Shah performs about forty-five percent of his surgeries at other hospitals.

There is no evidence that Deaconess has a right to control the manner and means of Shah's performance. Although the hospital requires all physicians having surgical privileges to abide by the applicable standard of care, this requirement applies regardless of employment status and is enforced only after-the-fact, through the peer review process. Nothing in the record suggests that Deaconess has the right to interfere with Shah's medical discretion or otherwise control the manner and means of his performance as a surgeon. By Shah's own admission, he treats his own patients and contracts freely with other hospitals. There is no evidence that Shah must accept patients referred to him by the hospital, and, as far as the record discloses, Deaconess does not dictate Shah's hours or hire and pay Shah's assistants. As Shah testified at his deposition, he receives no payment from Deaconess and is not treated as an employee for tax purposes. Thus, there is no proof of the existence of an employment relationship between Shah and Deaconess.

We note in passing that Shah's relationship with Deaconess is nothing like the situation we addressed in *Christopher*, 936 F.2d 870, a Title VII retaliation case involving a scrub nurse whose hospital nursing privileges were revoked. In *Christopher*, we explained that the plaintiff scrub nurse was neither an employee nor an independent contractor of the defendant hospital. *Id.* at 877. We held nonetheless that she could pursue her Title VII claim because the hospital *affected her employment opportunities with third parties*, namely, physicians who employ scrub nurses *if* they have hospital privileges. *Id.* at 875. Although one might question whether the reasoning in *Christopher* can be reconciled with our more recent cases employing the common law agency test, we need not address the issue because nothing in the present record suggests that a partial loss of surgical privileges at Deaconess directly impairs Shah's employment with third parties. We therefore conclude that Shah, in his relationship with Deaconess Hospital, is not protected by the ADEA, Title VII, or Ohio. Rev. Code Ann. § 4112.02(A).

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment for Deaconess.